# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION


JOEL PRICE,

     Plaintiff,

v.                                      Case No. 8:19-cv-00591-T-02AAS

TOWN OF LONGBOAT KEY, FLORIDA,

     Defendant.

_____/

## ORDER

This matter comes to the Court on Defendant Town of Longboat Key, Florida's Motion to Dismiss Plaintiff Price's Complaint. Dkt. 11. Plaintiff has filed an opposition in response, Dkt. 16, to which Defendant has replied, Dkt. 23. The Court GRANTS the motion. Dkt. 11. The Complaint, Dkt. 1, is dismissed without prejudice.

## BACKGROUND

As alleged in the Complaint, Defendant provides a website, www.longboatkey.org, for the public to obtain information about the Town of Longboat Key (the "Town") government. Dkt. 1 ¶ 3. Much of the available information, which relates to government "policies and positions which affect the public directly," is provided in portable document format ("PDF"). *Id.* ¶¶ 3, 23.

Some of this content is not accessible by persons who are visually impaired and use screen readers like Plaintiff. *Id.* ¶¶ 4-5, 13-14. This is because the documents are provided in a PDF flat surface format that does not interface with screen reader software. *Id.* ¶ 29.

On December 20, 2018, Plaintiff wrote a letter to Defendant to inform Defendant that, due to his blindness, he was unable to access the documents. *Id.* ¶ 33. In its response on January 4, 2019, Defendant stated the documents requested would be produced via thumb drive. *Id.* ¶ 34. Though Plaintiff does not allege that he was unable to access the content on the thumb drive, he does allege that on January 19, 2019 he was still unable to access "Defendant's electronic documents." *Id.* ¶ 35. Plaintiff also does not allege that he is a resident of the Town or has any concrete plans to visit or move to the Town.

Plaintiff filed his two-count Complaint on March 8, 2019. Dkt. 1. Count I is for "violations of Title II of the ADA," *id.* at 12, and Count II is for "violation of Section 504 of the Rehabilitation Act," *id.* at 15. Plaintiff seeks a variety of relief, including monetary and injunctive relief. *Id.* at 23-24. Defendant moves to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. 11.

**LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal,* 556

U.S. 662, 678 (2009) (citation omitted). When considering a Rule 12(b)(6) motion, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citation omitted). Courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted).

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction "can be asserted on either facial or factual grounds." *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009) (citation omitted). Because Defendant relies only upon Plaintiff's complaint, this is a facial attack.

## DISCUSSION

The Court finds it useful to begin by surveying the legal basis of Plaintiff's claims. As the Eleventh Circuit has noted:

> The ADA covers three main types of discrimination, each of which is addressed in one of the statute's three main subchapters: Title I prohibits discrimination in private employment; Title II prohibits discrimination by public entities (state or local governments); and Title III prohibits discrimination by a 'place of public accommodation,' which is a private entity that offers commercial services to the public.

*A.L. by & through D.L. v. Walt Disney Parks & Resorts US, Inc.*, 900 F.3d 1270,

1289 (11th Cir. 2018). Title II provides that no person with a qualified disability

shall "be excluded from participation in or be denied the benefits of the services,

programs, or activities of a public entity, or be subjected to discrimination by any

such entity." 42 U.S.C. § 12132.

 To state a claim under Title II, a plaintiff must establish: "(1) that he is a

'qualified individual with a disability;' (2) that he was 'excluded from participation

in or . . . denied the benefits of the services, programs, or activities of a public

entity' or otherwise 'discriminated [against] by such entity;' (3) 'by reason of such

disability.'" *Shotz v. Cates*, 256 F.3d 1077, 1079 (11th Cir. 2001) (quoting §

12132). Section 504 of the Rehabilitation Act has the same requirements as applied

to programs or activities receiving federal financial assistance. 29 U.S.C. § 794;

*see also J.S., III by & through J.S. Jr. v. Houston Cty. Bd. of Educ.*, 877 F.3d 979,

985 (11th Cir. 2017) ("Discrimination claims under the ADA and the

Rehabilitation Act are governed by the same standards, and the two claims are

generally discussed together.").

 As noted by other courts in this district, there is a lack of guidance on Title II

claims in the website context. *E.g.*, *Price v. City of Ocala, Florida*, No. 5:19-cv-

39-Oc-30PRL, 2019 WL 1811418, at *6 (M.D. Fla. Apr. 22, 2019). The

Department of Justice ("DOJ"), which is charged with creating regulations to

implement the ADA, has suggested such claims are available:

> Although the language of the ADA does not explicitly mention
> the Internet, the Department has taken the position that title II
> covers Internet Web site access. Public entities that choose to
> provide services through web-based applications (e.g.,
> renewing library books or driver's licenses) or that
> communicate with their constituents or provide information
> through the Internet must ensure that individuals with
> disabilities have equal access to such services or information,
> unless doing so would result in an undue financial and
> administrative burden or a fundamental alteration in the nature
> of the programs, services, or activities being offered. … [A]n
> agency with an inaccessible Web site may also meet its legal
> obligations by providing an alternative accessible way for
> citizens to use the programs or services, such as a staffed
> telephone information line.

28 C.F.R. § Pt. 35, App. A. Furthermore, public entities are prohibited from

"providing any aid, benefit, or service" that "afford[s] a qualified individual with a

disability an opportunity to participate in or benefit from the aid, benefit, or service

that is not equal to that afforded others." 28 C.F.R. § 35.130(b)(1)(ii). They must

also "make reasonable modifications in policies, practices, or procedures when the

modifications are necessary to avoid discrimination on the basis of disability,

unless the public entity can demonstrate that making the modifications would

fundamentally alter the nature of the service, program, or activity." *Id.* §

35.130(b)(7).

Public entities shall further "take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others." *Id.* § 35.160(a)(1). To this end, public entities are required to "furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities . . . an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." *Id.* § 35.160(b)(1).

Against that backdrop, Defendant raises a number of arguments for dismissal: (1) abstention under the primary jurisdiction doctrine; (2) the lack of standing; (3) Defendant's provision of a reasonable accommodation or auxiliary aid; and (4) due process considerations in the absence of website accessibility standards. The Court will address these in turn.

I.      Primary Jurisdiction

Defendant first argues that dismissal is appropriate because, in the absence of relevant regulation, there is no existing legal duty or guidelines for website accessibility under Title II. Dkt. 11 at 4. The doctrine of primary jurisdiction provides that a "court of competent jurisdiction may dismiss or stay an action pending a resolution of some portion of the action by an administrative agency." *See Smith v. GTE Corp.*, 236 F.3d 1292, n.3 (11th Cir. 2001). The Eleventh Circuit recently held in a website ADA case that abstention under the doctrine is

appropriate "when a court maintains jurisdiction over a matter but nonetheless abstains for prudential reasons." *Sierra v. City of Hallandale Beach, Fla.*, 904 F.3d 1343, 1350 (11th Cir. 2018). Two factors are relevant: (1) the "expertise of the agency deferred to" and (2) the "need for a uniform interpretation of a statute of regulation." *Id.* at 1351 (citation omitted).

In *Sierra*, the court rejected an argument to abstain pending deference to the Federal Communications Commission (FCC). *Id.* The court reasoned that, though a particular statute directed the FCC to undertake rulemaking on closed captioning, the FCC had no expertise on standards under the ADA. *Id.* at 1351-52. As for uniformity, the court noted that the case "present[ed] no special need for uniformity apart from the general need for uniformity that the law requires" because, unlike cases where inconsistent positions could defeat a statute, "one plaintiff benefiting from a more favorable interpretation of the Rehabilitation Act or ADA does not do so at some other plaintiff's expense." *Id.* at 1352.

Here, Plaintiff asks the Court to defer to DOJ—not the FCC—which is the entity tasked with ADA rulemaking. 42 U.S.C. §12134(a) ("The Attorney General shall promulgate regulations in an accessible format that implement this part."). But even if the Court were to find the first factor (agency expertise) satisfied, it is not clear to the Court why these facts present a stronger argument for uniformity of interpretation than in *Sierra*. *See also Robles v. Domino's Pizza, LLC*, 913 F.3d

898 (9th Cir. 2019) (finding primary jurisdiction for deferral to DOJ inappropriate).

In any event, because Plaintiff lacks standing and fails to state a claim, dismissal is nonetheless warranted. Because standing is a threshold issue, the Court turns to it first.

II.     Standing

To establish standing, a plaintiff must demonstrate: (1) he has suffered an "injury-in-fact"; (2) a causal connection between the asserted injury-in-fact and the challenged action of the defendant; and (3) "the injury will be redressed by a favorable decision." *Shotz*, 256 F.3d at 1081 (citation omitted). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (citation omitted). "Particularized" means that the injury "must affect the plaintiff in a personal and individual way." *Id.* (citations omitted). A "concrete" injury, meanwhile, must be "de facto; that is, it must actually exist," or in other words, "real, and not abstract." *Id.* (citations and internal quotation marks omitted). Claims for injunctive relief, moreover, require "a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury." *Shotz*, 256 F.3d at 1081 (citation omitted).

In the vein of *Shotz* and the recently decided *Price v. City of Ocala, Florida*,

Defendant argues that "Plaintiff's likelihood of suffering a future injury is purely

speculative and/or conjectural." Dkt. 11 at 18. While true, because Plaintiff seeks

money damages in addition to declaratory and injunctive relief, the Court's task

does not end with such a finding. Nonetheless, the Court finds that the same

considerations weighing against finding a real and immediate threat of future

injury also foreclose an injury-in-fact.

Plaintiff's claims center around his inability to access materials on the

Town's website. His complaint, which essentially mirrors that filed in *Price v. City*

*of Ocala, Florida*, alleges that:

- As an active and social Florida resident, Plaintiff is interested in the quality of life, the environment, the response to hurricane conditions (preparation and aftermath) and the level of responsiveness to environmental restoration, which would make [the Town] a viable visiting and living option. Therefore, Plaintiff is interested in investigating the availability of public transportation, and the resources dedicated to informing the public on how to prepare for and deal with the aftermath of environmental disasters, as well as the types of county preparation and citizen resources in [the Town]. Dkt. 1 ¶ 30.
- Plaintiff visited Defendant's Website with the intent of educating himself about the quality of life and governmental functioning in [the Town]. Plaintiff also wanted to find out more about programs, services and activities available to visitors and residents of [the Town]. ¶ 31.
- By Defendant's failure to make the electronic documents on its Website accessible, Plaintiff has suffered injuries and shame, humiliation, isolation, segregation, experienced emotional suffering, pain and anguish and has been segregated and prohibited from enjoying the programs, services and activities offered by Defendant to the public. ¶ 36.
- Plaintiff has been prevented from becoming informed of [the Town's] governmental functioning, policies, programs, services and activities as

offered to the public by Defendant because of his vision disability. As such, Plaintiff was left excluded from participating in [the Town] government and the community services, programs and activities offered by [the Town] in a manner equal to that afforded to others who are not similarly disabled. ¶ 39.

- Plaintiff continues to desire to become involved in and monitor [the Town's] governmental process. ¶ 42.

More illustrative, though, is what Plaintiff does *not* allege. There are no allegations, for example, that Plaintiff is, has ever been, or plans to be a resident of the Town. He has apparently not even visited or has concrete plans to visit the Town. Determining whether the Town would be a "viable visiting and living option," without more, is insufficient to find a concrete and particularized injury. *Cf. Rosenkrantz v. Markopoulos*, 254 F. Supp. 2d 1250, 1253 (M.D. Fla. 2003) (finding that plaintiff's claimed injuries were speculative or conjectural as the plaintiff lived hundreds of miles away and had been to the establishment only once). Thus, Plaintiff does not make clear his ties or connections to the Town or, as it relates particularly to him, the importance of the information that he is unable to access.

Compare this to cases that have allowed ADA claims in the website context. Though standing was not at issue, *Hindel v. Husted*, No. 2:15-CV-3061, 2017 WL 432839 (S.D. Ohio Feb. 1, 2017) involved absentee voting through a website. Another, *Martin v. Metro. Atlanta Rapid Transit Auth.*, 225 F. Supp. 2d 1362 (N.D. Ga. 2002), concerned the use of public transportation for actual users, not disinterested parties who were unable to access the website. And DOJ has

suggested other possibilities, such as "services through web-based applications (e.g., renewing library books or driver's licenses)" or communication with a public entity's *constituents*—again, not disinterested parties. 28 C.F.R. § Pt. 35, App. A.

The DOJ went on to note that, "an agency with an inaccessible Web site may also meet its legal obligations by providing an alternative accessible way for citizens to use the programs or services, such as a staffed telephone information line." *Id.* Indeed, according to the Town's response letter attached to the Complaint and unrefuted by Plaintiff, Plaintiff has received the information he sought via thumb drive. All that remains is the accessibility of the material online, but use of an alternative method of delivery, even if not preferred, hardly constitutes an injury-in-fact. The Town responded very shortly after Plaintiff's request for accommodation, and there is no indication that, upon receiving the thumb drive, Plaintiff ever expressed his dissatisfaction with the accommodation or that the Town was unwilling to further accommodate him. The Town moreover confirmed that the content on the drive worked with a common screen reader. The Court finds this relevant for both an injury-in-fact for standing purposes and, as noted below, for Plaintiff's failure to state a claim.

The Court acknowledges that, as pointed out in *Price v. City of Ocala, Florida*, the Eleventh Circuit has allowed for "testers" to sue under Title III.

*Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1332 (11th Cir. 2013). The

court reasoned that the:

> invasion of [the plaintiff's] statutory right in § 12182(a) occurs
> when he encounters architectural barriers that discriminate
> against him on the basis of his disability. When he encounters
> those barriers, Plaintiff . . . has suffered injury in precisely the
> form the statute was intended to guard against. This legal right
> created by §§ 12182(a) and 12182(b)(2)(A)(iv) does not depend
> on the motive behind Plaintiff['s] . . . attempt to enjoy the
> facilities of the [Defendant].

*Id.* at 1332 (internal quotation marks, citations, and emphasis omitted). In reaching

its decision, the Eleventh Circuit looked to the Tenth Circuit's opinion in *Tandy v.*

*City of Wichita*, 380 F.3d 1277 (10th Cir. 2004), a Title II case.

But there are reasons to think the rationale of *Houston* does not apply to the

facts here. First and foremost, *Houston* was a Title III case and neither it nor *Tandy*

addressed websites. Relatedly, *Houston* predates *Spokeo*, in which the U.S.

Supreme Court observed that "Article III standing requires a concrete injury even

in the context of a statutory violation. For that reason, [a plaintiff] could not, for

example, allege a bare procedural violation, divorced from any concrete harm, and

satisfy the injury-in-fact requirement of Article III." 136 S. Ct. at 1549. It is thus

not enough for Defendant to violate the language of the ADA; Plaintiff must still

suffer a concrete harm. As explained above, he has not.

In the absence of a real and immediate threat of future injury, injunctive relief is inappropriate. Additionally, because Plaintiff did not suffer an injury-in-fact, he has no standing.

III.    Failure to State a Claim

Defendant similarly argues that Plaintiff fails to state a claim because Defendant provided an appropriate "auxiliary aid." Based on the allegations and as mentioned above, the Court agrees.

The Court further notes that to be eligible for compensatory damages under the ADA, a plaintiff must show that a defendant violated his rights with discriminatory intent. *McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1146-47 (11th Cir. 2014). "A plaintiff may prove discriminatory intent by showing that a defendant was deliberately indifferent to his statutory rights," which is an "exacting standard" that requires more than gross negligence. *Id.* at 1147 (citations omitted). "To establish deliberate indifference, a plaintiff must show that the defendant *knew* that harm to a federally protected right was substantially likely and *failed* to act on that likelihood." (citations and internal quotation marks omitted) (emphasis in original).

The allegations here do not give rise to such a finding—quite the contrary. Apart from conclusory language, Plaintiff does not establish that Defendant knew that the portions of its website at issue would be inaccessible to disabled

individuals, or that Defendant knew such inaccessibility would infringe upon a

federally protected right. Indeed, not even the courts are entirely in accord on the

matter.

Once aware of Plaintiff's request, Defendant acted accordingly. In his letter

to the Town, Plaintiff specifically requested the Town's budget for 2015-2018 and

the Town Commission agendas for 2016-2018. Dkt. 1-1. In addition to providing

that very material, the Town's letter stated:

> Our website has been adjusted and documents have been
> modified to work with screen readers. We have limited
> available budgetary and agenda item documents to the current
> year (or last fiscal year), however the [requested] documents are
> being produced to you via a thumb drive. We ensured the
> documents would be read with a screen reader using a common
> one called JAWS (2019). We made efforts to ensure the
> documents are all fully OCR'd and images are tagged
> appropriately. We continue our efforts on all our documents
> that they are fully accessible. If you notice any deficiencies,
> please notify us so we can resolve them on these documents and
> others that may be posted on our website.
>
> We continue our efforts in making our website accessible. In
> the interim, and until such time as the website is fully
> functional in this regard, should you need any further
> documents, or encounter any additional barriers to access or
> other unreadable documents, please notify us immediately in
> order that we can ensure that the barriers are removed from the
> website, and that the information you are seeking is provided to
> you promptly. If you could please be specific and indicate the
> nature of the problem, the preferred format in which to receive
> the material and webpage address of the requested material, it
> will allow us to better serve you.

Dkt. 1-2. There is again no indication that Plaintiff replied or sought further

accommodation.

Plaintiff points to no caselaw that suggests an ADA claim properly lies on

these facts. Rather, courts within the Eleventh Circuit have found otherwise. *Gil v.*

*Broward Cty., Fla.*, No. 18-60282-CIV, 2018 WL 4941108, at *2 (S.D. Fla. May

7, 2018) (applying Title III principles in finding dismissal of Title II suit warranted

"in the absence of allegations that Plaintiff's inability to use the Website impedes

his access to Defendant's physical buildings or facilities"); *see also Price v. City of*

*Ocala, Florida*, 2019 WL 1811418, at *10 n.16 (noting that dismissal for failure to

state a claim under Title II was appropriate). In the absence of discriminatory

intent, compensatory damages are unavailable. Because of Defendant's

accommodation, Plaintiff further fails to state a claim.

## IV. Due Process

Though the Court need not reach Defendant's due process argument in

resolving the motion, the Court does note that other courts have rejected similar

positions. *E.g., Robles*, 913 F.3d at 909 ("[The website provider] has received fair

notice that its website and app must provide effective communication and facilitate

'full and equal enjoyment' of [its] goods and services to its customers who are

disabled. Our Constitution does not require that Congress or DOJ spell out exactly

how [the provider] should fulfill this obligation."). In fact, in *Robles* the Ninth

Circuit distinguished *United States v. AMC Entm't, Inc.*, 549 F.3d 760 (9th Cir. 2008) upon which Plaintiff relies. Defendant is to keep the above in mind should the case proceed.

## CONCLUSION

The Court GRANTS Defendant's Motion to Dismiss. Dkt. 11. The Complaint is dismissed without prejudice. Plaintiff has fourteen (14) days from the date of this order to amend the Complaint.

**DONE AND ORDERED** at Tampa, Florida, on May 20, 2019.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

<u>**COPIES FURNISHED TO:**</u>
Counsel of Record